**In the Interest of R. L., a child.**

**No. 9234.**

Court of Civil Appeals of Texas, Amarillo.

July 31, 1981.

West Texas Legal Services, Samuel T. Jackson, Amarillo, for appellant.

Pressley & Taylor, Vann D. Pressley, Amarillo, Atty. Ad Litem, Carmen Elaine Eiker and Judy E. Speer, County Attys. Office, Amarillo, for appellees.

REYNOLDS, Chief Justice.

The mother of R. L., a child, appeals from a judgment terminating the parent-child relationship. Because we are unable to find from the appellate record that the proof is factually sufficient to justify termination, we reverse and remand.

Acting on a petition filed by the Texas Department of Human Resources and following a bench trial, the court rendered judgment ordering a termination of the parent-child relationship between the mother and her female child, R. L., including the child's right to inherit from her mother. Tex.Fam.Code Ann. § 15.07 (Vernon Supp. 1980–1981). The Department was appointed managing conservator for the child.

The mother timely moved, and the court granted her request, for written findings of fact and conclusions of law to be made and filed as a constituent part of the record. When the factual findings and legal conclusions had not been filed more than a month later, the mother again sought them by her second request, which was acknowledged by the court's endorsement. Some three weeks later, the mother applied for, and by endorsement the court allowed, the filing of a bill of exceptions reciting the due requests for, and the failure to file, findings of fact and conclusions of law. Subsequently, the transcript and a supplement thereto, both certified to contain all proceedings requested by counsel, were filed in this Court sans findings of fact and conclusions of law.

In the interim, the mother established her inability to pay the costs of appeal or to give security therefor. The court ordered the official court reporter to make a statement of facts in narrative form to contain all of the evidence adduced on the trial. Thereafter, the court reporter resigned and refused to prepare the statement of facts unless she was paid. On the application of the mother, a statement of facts in narrative form was secured by writ of mandamus. *Loflin v. Weiss*, 605 S.W.2d 377 (Tex. Civ.App.—Amarillo 1980, no writ).

Afterwards, the mother, asserting that the narrative statement of facts prepared was inaccurate and incomplete, moved for an order from this Court requiring the court reporter to prepare a complete statement of facts in question and answer form. We overruled the motion, as well as a similar motion for a partial statement of facts, and the Supreme Court overruled the mother's motion for leave to file a petition for writ of mandamus. *Loflin v. The Seventh Court of Civil Appeals, et al.*, 24 Sup.Ct.J. 60 (Nov. 5, 1980).

Utilizing ten points of error, the mother seeks a reversal of the judgment. The Department and the guardian ad litem appointed to represent the interest of the child defend the judgment and, because their positions are identical, they collectively will be referred to as the Department, except where otherwise noted.

At the outset, the mother charges the trial court with reversible error in failing to file findings of fact and conclusions of law. The Department has conceded that the mother timely complied with all requirements to secure the factual findings and legal conclusions. The compliance triggers the general rule, articulated in *Wagner v. Riske*, 142 Tex. 337, 178 S.W.2d 117, 119–20 (1944), that the failure of the trial court to file findings of fact and conclusions of law constitutes reversible error, unless the record before the appellate court affirmatively shows that the complaining party has suffered no injury. Subsequently, the Court, citing Rule 434, Texas Rules of Civil Procedure, held that the appellant suffered no injury by reason of the late filing of findings of fact and conclusions of law when they were included in the transcript. *Bostwick v. Bucklin,* 144 Tex. 375, 190 S.W.2d 818 (1945). Rule 434, which became effective 1 September 1941, provides that

If the erroneous ... failure or refusal of the trial judge to act shall prevent the proper presentation of a cause to the Court of Civil Appeals, and be such as may be corrected by the judge of the trial court, then the judgment shall not be reversed for such error, but the appellate court shall direct the said judge to correct the error, and thereafter the Court of Civil Appeals shall proceed as if such erroneous ... failure to act had not occurred.

The Department suggests that we apply the provisions of the rule as have some of the intermediate courts, *e. g., Fine v. Scott*, 592 S.W.2d 56 (Tex.Civ.App.—Eastland 1979,

writ ref'd. n. r. e.), to direct the trial court to file its findings and conclusions.*

However, we have determined not to pursue the matter of the absence of factual findings and legal conclusions. Even if they were secured, we still could not say, with any confidence, that the clear and convincing evidence necessary to affirm the judgment is discernible from the narrative statement of facts.

The judgment recites as the basis for the termination that the court finds the mother has

Knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical and emotional well-being of the child, and engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child.

The establishment of either ground, coupled with the court's finding that termination is in the best interest of the child, justifies termination. Tex.Fam.Code Ann. § 15.02 (Vernon Supp. 1980–1981).

The child, R. L., required surgery within twenty-four hours of her birth to correct an obstruction of her windpipe. Twelve days later, the child was released from the hospital and remained in her mother's home for about three weeks before she was again hospitalized. Approximately a week prior to the second hospitalization, the mother was incarcerated in jail, and during this week, the child was left with the mother's husband.

The child's second hospitalization was because she had not been sufficiently fed. After four days, the mother's husband removed the child against medical advice. Three days later, the mother, upon being released from jail, recovered possession of the child. The following week, the child was taken to the hospital with a breathing problem and released to the mother the next day.

---

* The guardian ad litem adds that because the mother has admitted in her brief that findings of fact and conclusions of law, filed too late to be included in the transcript, are on file in the office of the clerk of the trial court, we may order them to be filed. If they are so filed, there is no corroboration of that fact in the record on appeal and, interestingly, none of the parties has moved for their inclusion in the appellate record. *See* Tex.R.Civ.P. 389.

On that day, the Department assumed possession of the child, secured a protective order from the court the following day, and served as temporary managing conservator until the date of judgment. After the Department took possession, the mother visited the child at the Department every two weeks for nine months. Thereafter, she had possession of the child for two days each week, with one interruption on medical advice, and was visited each day by a Department caseworker until the termination about nine months later. The mother's possession was sanctioned by court order.

The Department points to testimony that the child was inappropriately dressed, kept in sub-standard housing that was too hot or too cold and generally dirty, fed improperly and contrary to feeding instructions, and bruised on occasions. Once the child had been fed whole kernel corn and, at another time, the child's food was observed unrefrigerated. The Department also selects testimony that, during the time the mother was in jail, the child was left with the husband who, according to the mother, was an alcoholic. At one other time, a Department caseworker observed during a seven to eight minute visit that a babysitter allowed the child to lie in bed alone with no side supports and picked up the child without providing support for the child's head or back. Further, the Department notices the medical doctor's testimony which indicates a diagnosis of maramus, a starvation syndrome.

From the same narrative of the evidence, the mother notes the lack of any evidence that either the conditions or surroundings were dangerous to the child before the mother was jailed, involuntarily leaving the child with her husband over whom she had no control when he took the child from the hospital. She also represents an absence of evidence that she placed or left the child with a babysitter. Other than these two instances, the mother emphasizes that if the child was placed or allowed to remain in endangering conditions or surroundings it was because the Department, as the conservator, placed and continued to place the child with the mother for two days each week for the nine months prior to judgment. The mother asserts that the acts and conditions pointed out by the Department are, in essence, isolated as to periods of her possession and separate and apart from other periods of her possession when there is no evidence of complaints. She references conflicting testimony concerning feeding instructions, the bruises on the child, and the conditions of her housing. She suggests the psychologist's concern with factors in evaluating her parenting abilities negates any proof that she knowingly endangered the child. Finally she submits, with record references, that some of the lay and medical testimony was predicated on and constituted hearsay.

We do not doubt that there is some evidence of probative force to support the grounds for termination. Our concern, however, is whether, on balance, the evidence is clear and convincing. What we review is not the verbatim testimony of the witnesses, but, perforce the narration, the court reporter's version, i. e., a subjective evaluation, of the testimony adduced from the witnesses.

We have not overlooked the fact that a narrative statement of facts was authorized. Tex.R.Civ.P. 380. Yet, the mother has stated as a fact in her brief that the narrative statement of facts is inaccurate. The Department has not challenged the factual statement of inaccuracy and, therefore, it may be credited as being correct. Tex.R. Civ.P. 419.

■ The natural right between the parent and child is one of constitutional dimensions, and its termination is final and irrevocable, forever divesting the parent and child of all legal rights, privileges, duties and powers between them, including, as the court ordered here, the child's right to inherit. As a consequence, the termination proceedings must be strictly scrutinized and, to rebut the strong presumption that the best interest of the child is served by maintaining the parent-child relationship, the proof must be clear and convincing. *In Interest of G. M.*, 596 S.W.2d 846 (Tex.

1980). Given these considerations, we are not able to say with any degree of certainty that the proof revealed by the narrative statement of facts to justify termination meets and satisfies that standard.

Accordingly, we sustain the points of error by which the mother challenges the factual sufficiency of the evidence to support the grounds for termination. Her other points are overruled.

The judgment of the trial court is reversed, and the cause is remanded.