Karen L. TIPPS as Next Friend of Lori R. KISER, a Minor, Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant,

v.

Michael Steven KISER, Intervenor.

Civ. A. No. G–89–122.

United States District Court,
S.D. Texas,
Galveston Division.

May 14, 1991.

Garth E. Wood, Alvin, Tex., for plaintiffs.

W.E. Verkin, Alvin, Tex., for intervenor.

## MEMORANDUM OPINION

HUGH GIBSON, District Judge.

A trial was held to the Court on April 8, 1991. Representing the plaintiffs was Garth E. Wood, and representing the intervenor was W.E. Verkin. Karen Tipps and Michael Steven Kiser (Steven Kiser) were present and testified at these proceedings. Lori Kiser was not in attendance during the trial.

*Findings of Fact*

Karen L. Tipps, now Karen L. Hjerpe, formerly Karen L. Kiser, and Carl Richard Kiser were married on February 26, 1971, separated sometime in late 1974, and were divorced on June 5, 1975. Steven Kiser, son of Carl and Karen Kiser was born on August 23, 1971. A daughter, Lori R. Kiser, was born to Karen Kiser on July 17, 1975. At the time of his death on July 12, 1988, Carl Kiser was an employee of the United States Postal Service, and in connection with his employment owned an insurance policy on his life issued by Metropolitan Life Insurance Company. Carl Kiser had not designated any beneficiary for this policy and was not married at the time of

his death. Under federal law, his surviving children are entitled to the life insurance proceeds. The insurer, Metropolitan Life Insurance Company, deposited the life insurance proceeds with the court. Steven Kiser already has received approximately one-half of these proceeds, with the balance still on deposit with the Registry of the Court.

Karen Tipps asserts that Carl Kiser is Lori's biological father and additionally argues that Carl Kiser accepted and treated Lori as his daughter. Conflicting evidence was introduced concerning the nature of the relationship between Lori and Carl Kiser. Karen Tipps testified that Carl Kiser acknowledged Lori as his daughter and in support of this contention offered for consideration a number of documents. Among these documents were a birth certificate and a baptismal record, both of which listed Carl Kiser as Lori's father. Although there is no proof that Carl Kiser approved of, or even knew about, his name appearing on the birth certificate, it appears that he knowingly and purposefully allowed his name to appear as Lori's father on the baptism certificate. Additionally, Carl Kiser carried Lori on his medical insurance policy until Karen Tipps remarried. However, evidence was offered which showed that Carl Kiser also provided medical coverage to Karen Tipps son from a previous marriage under this policy, and there was no intimation that this gratuitous act constituted any intent on the part of Carl Kiser to adopt this child.

Evidence tending to prove that no parent-child relationship was established between Carl Kiser and Lori includes: the Report of the Master filed with Carl and Karen Kiser's divorce decree contained a statement that there was only one child of the marriage, Michael Steven Kiser, and the report made no mention of Karen Kiser's pregnancy; Carl Kiser's "last will and testament" signed and witness August 22, 1987, designated Steven Kiser as the primary beneficiary, and made no mention Lori Kiser; Lori's birth announcement in a local paper which did not list Carl Kiser as the father; testimony from Carl Kiser's mother that Carl's words and actions indicated

that Carl Kiser did not believe Lori to be his daughter; and evidence that Lori was told, by her mother Karen Tipps, that her father was a man named Richard Krasa. Karen Tipps somewhat confusing explanations did not refute this evidence.

Scientific evidence addressing whether or not Carl Kiser was the biological father of Lori was presented by Dr. Charlotte Wood of Cellmark Diagnostics, a firm specializing in paternity determinations. Prior to employment with Cellmark Diagnostics, Charlotte Wood received a doctoral degree in microbiology from the University of Virginia, and subsequently spent three and one-half years performing research in the fields of molecular biology and molecular genetics at the University of Texas Southwestern Medical School in Dallas. Dr. Wood explained the "DNA Fingerprinting" method for determining paternity, a genetic and molecular biological process that is based upon the fact that each individual has an entirely unique genetic "signature" (except in the case of identical twins) derived from the DNA configuration. In DNA Fingerprinting, material from blood samples are subjected to a procedure from which autoradiographs are produced, and on which the unique genetic bands of each individual are visible. Dr. Wood offered several autoradiographs and explained the results of a DNA fingerprinting test that was conducted using blood samples from Steven Kiser, Lori, and Carl Kiser's parents.

These tests indicated that Lori and Steven were half-siblings, rather than full-siblings, and that Lori and Steven had different fathers. A comparison of the genetic bands generated on the autoradiographs also indicated that Steven Kiser was related to Carl Kiser parents, while Lori Kiser was not. Dr. Wood concluded that Carl Kiser was not Lori's father.

Dr. Wood testified that she could not give, with mathematical and scientific certainty, the probability of the test results being either correct or incorrect. She did state that based on her professional knowledge and experience in the field of genetic testing, the test results were at least 95%, and probably 99% conclusive.

*Conclusions of Law*

■ This original action was brought in federal court pursuant to 5 U.S.C.A. sec. 8715. Lori is a beneficiary under Carl Kiser's insurance policy if it is established that Lori is Carl Kiser's child. 5 U.S.C.A. sec. 8705. State law controls definitions of terms describing familial relationships in Federal Employees Group Life Insurance Act policies. *Spearman v. Spearman*, 482 F.2d 1203 (5th Cir.1973). If there is no designated beneficiary nor surviving spouse to receive the insurance proceeds, reference is to be made to local law to determine the definition of "child". *See Green v. Green*, 365 A.2d 610 (D.C.App. 1976). The parties agree that the law of the forum state, Texas, is controlling in this action.

A parent-child relationship may be established by showing that Carl Kiser is the biological father of Lori Kiser as provided in the Texas Family Code. Tex.Fam.Code sec. 12.01(b) (Vernon Supp.1991). Alternative methods of establishing paternity, such as by proof of adoption or voluntary paternity, or a court decree establishing paternity of the child by another man, are not applicable to the facts in this case. *See* Tex.Fam.Code secs. 12.01(a)(3), 12.02, 13.-21, 13.22.

■ An action to determine the fact of paternity may be maintained after the death of the father. *Manuel v. Spector*, 712 S.W.2d 219, 222 (Tex.App.—San Antonio 1986, no writ). Under Texas law, Carl Kiser is presumed to be Lori's biological father since Lori was born within 300 days of the termination of the marriage by divorce. Tex.Fam.Code sec. 12.02(a)(1) (Vernon Supp.1991). The burden is on the party denying paternity to rebut the presumption of paternity. Tex.Fam.Code sec. 12.-06(c) (Vernon Supp.1991). The presumption may be rebutted only by clear and convincing evidence. Tex.Fam.Code secs. 12.02(b) (Vernon Supp.1991). The plaintiff argues that the presumption has not been rebutted, and that it should be determinative. For the defendants to prevail, they must demonstrate by clear and convincing evidence that Carl Kiser was not the biological father of Lori.

■ "Clear and convincing evidence" is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of allegations sought to be established. *Hellman v. Kincy*, 632 S.W.2d 216 (Tex.App.—Fort Worth 1982, no writ); *In Interests of A.C.*, 758 S.W.2d 390 (Tex.App.—Fort Worth 1988, no writ). The "clear and convincing" evidence standard requires a greater degree of proof than the "preponderance" standard, but less than proof "beyond a reasonable doubt" as required in criminal proceedings. *Flowers v. Texas Dept. of Human Resources, Tarrant County Welfare Unit*, 629 S.W.2d 891 (Tex.App.—Fort Worth 1982, no writ). It has been said that under our blended system of law and equity, the rule requiring that facts be established by clear and convincing evidence in practical effect is but an admonition to the judge to exercise great caution in weighing the evidence. *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206 (1950).

The testimony and other evidence relating to Carl Kiser's relationship with Lori neither rebuts the presumption of paternity, nor conclusively establishes that Carl Kiser was Lori's biological father. Prior to the development of accurate, scientific paternity testing, the presumption of paternity would easily have been sustained based solely on the testimony and evidence offered by the lay witnesses during the course of this trial.

■ Scientific paternity testing, however, is now a well established and accepted method of determining whether a specific individual is a child's biological father. *See* Tex.Fam.Code secs. 13.06(a) ("a party may call a paternity testing expert to testify at trial in person or by deposition") and 13.06(b) ("a verified written report of a paternity testing expert is admissible at the trial as evidence of the truth of the matters it contains"). The reliability of scientific evidence depends upon three factors: 1) the validity of the underlying scientific principle; 2) the validity of the technique

applying that principle; and 3) the proper application of the technique on a particular occasion. *Kelly v. State,* 792 S.W.2d 579, 584 (Tex.App.—Fort Worth 1990, rev. granted). While DNA Fingerprinting is a scientific procedure of relatively recent origin, Texas courts have accepted that "DNA fingerprinting—its underlying principles, procedure and technology—is a scientific test that is reliable and has gained acceptance in the scientific community in the particular field in which it belongs." *Glover v. State,* 787 S.W.2d 544 (Tex.App.—Dallas 1990, rev. granted). Thus, the only inquiries are whether the DNA Fingerprinting was conducted properly, and whether the results demonstrated by clear and convincing evidence that Carl Kiser was or was not Lori's biological father. Unlike DNA Fingerprinting utilized in a typical paternity action involving a living putative father, Carl Kiser has provided no genetic material to be compared with the alleged offspring. Determining Carl Kiser's biological relationship with Lori, therefore, must be by inference.

The plaintiffs contend that the procedure utilized by Cellmark Diagnostics in collecting the samples was defective, and this created a significant possibility that the test results were incorrect. Aside from the documentary evidence which showed the procedures used by Cellmark to collect the blood samples used in the test, the test results themselves indicate that the individuals providing the samples were indeed the parents of Carl Kiser, Steven Kiser, and Lori. Furthermore, Karen Tipps could have provided a blood sample to Cellmark which would have enhanced the accuracy of the results. She apparently refused to provide such a sample, and should not now complain that the test results are not accurate enough.

While proof under clear and convincing evidence must weigh heavier than merely the greater weight of credible evidence, there is no requirement that evidence must be unequivocal or undisputed. *Doria v. Texas Dept. of Human Resources,* 747 S.W.2d 953 (Tex.App.—Corpus Christi 1988, no writ). The only reliable evidence indicating that Carl Kiser acknowledged Lori as his daughter is the baptism certificate. We can only speculate as to the reason Carl Kiser decided to be listed as Lori's father on the certificate, but this lone document does not demonstrate that Carl Kiser intended to hold out to the public that he was Lori's father. Additionally, Karen Tipps statements to Lori and others declaring that Lori's father was a man other than Carl Kiser is a strong indication that Carl Kiser was not Lori's father. We further note that no evidence was presented to show that Lori Kiser, through her natural mother, initiated or attempted to initiate a paternity action during Carl Kiser's lifetime.

The Court finds that Dr. Wood's DNA fingerprinting evidence and testimony, taken in conjunction with the other evidence presented during the course of the trial, provides clear and convincing evidence that Carl Kiser was not the biological father of Lori Kiser. Judgment will be entered in favor of Michael Steven Kiser.

## AMENDED FINAL JUDGMENT

On April 25, 1991 this Court issued a Final Judgment in this case. That judgment is withdrawn and shall be void.

A trial was held to the Court on April 8, 1991. Representing the plaintiffs was Garth E. Wood, and representing the intervenor was W.E. Verkin. Karen Tipps and Steven Kiser were present and testified at these proceedings. Lori Kiser was not in attendance during the trial. The Court's Findings of Fact and Conclusions of Law have been filed, and it is,

ORDERED, ADJUDGED, and DE-CREED that Lori Kiser and Karen Hjerpe TAKE NOTHING. The stakeholder, Metropolitan Life Insurance Company, was awarded expenses which were disbursed in October, 1989. The remaining parties shall bear their own costs. It is further,

ORDERED that the remaining funds, including all interest accrued, deposited in the Registry of the Court by Metropolitan Insurance Company for the beneficiaries of

policy no. 17000–G shall be disbursed to Steven Kiser.